No. 13-7291

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

SAMUEL JUNIOR JACKSON,

*Plaintiff-Appellant*,

v.

JOSEPH LIGHTSEY; SHER GULERIA,

*Defendants-Appellees*,

and

N.C.D.O.C. MEDICAL STAFF,

*Defendant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## OPENING BRIEF FOR PLAINTIFF-APPELLANT SAMUEL JUNIOR JACKSON

Elliott Schulder
Daniel S. Harawa
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Phone: (202) 662-5850
Fax: (202) 778-5850
Email: dharawa@cov.com

*Counsel for Plaintiff-Appellant Samuel Junior Jackson*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 2

ISSUES PRESENTED.................................................................. 2

STATEMENT OF THE CASE....................................................... 2

STATEMENT OF FACTS ............................................................ 4

    A.    Jackson Suffers from Congestive Heart Failure .................................. 4

    B.    Central Prison Officials Failed to Adequately Treat Jackson's Heart Condition ................................................................ 4

    C.    Inadequate Medical Care Has Continued at Nash Correctional Institution......................................................... 6

    D.    The District Court's Decisions........................................ 7

        1.    Dismissal of N.C.D.O.C. Medical Staff as a Party................... 7

        2.    Dismissal of Claims Against Lightsey and Guleria Under Rule 12(b)(6)........................................................... 8

SUMMARY OF ARGUMENT ...................................................... 9

ARGUMENT ............................................................................... 10

I.    STANDARD OF REVIEW .................................................... 10

    A.    Dismissal Under 28 U.S.C. § 1915A ................................. 10

    B.    Dismissal Under Rule 12(b)(6) ....................................... 11

II.    JACKSON'S CLAIMS FOR INJUNCTIVE RELIEF ARE NOT MOOT....................................................................... 12

    A.    The District Court Erred in Dismissing N.C.D.O.C. Medical Staff as a Defendant ....................................... 13

B.     The Injunctive Relief Sought by Jackson is Still Available Once N.C.D.O.C. Medical Staff is Restored as a Party ............................. 15

III.    JACKSON ASSERTED PLAUSIBLE CLAIMS OF DELIBERATE INDIFFERENCE ................................................................................. 17

A.     Jackson Suffers From a Serious Medical Condition and Needs Proper Medical Attention .................................................................. 17

B.     Defendants Were Deliberately Indifferent to Jackson's Medical Needs ........................................................................................... 19

    1.    Lightsey failed to verify facts necessary to make a sound medical judgment .................................................................... 20

    2.    Lightsey failed to provide treatment for Jackson's serious medical condition .................................................................... 22

    3.    Defendants decided not to alter Jackson's course of treatment despite his continued suffering ................................ 24

    4.    Guleria was deliberately indifferent when he failed to provide the treatment that he himself prescribed .................... 26

    5.    Defendants failed to provide Jackson access to a cardiologist despite a clear need for a specialist ..................... 27

C.     "Some" Medical Treatment Is Not the Same as Constitutionally Adequate Medical Treatment ............................................................ 29

CONCLUSION ................................................................................................ 32

ORAL ARGUMENT ........................................................................................ 32

CERTIFICATE OF COMPLIANCE ..................................................................... 33

CERTIFICATE OF SERVICE ............................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................12

*Brice v. Va. Beach Correctional Cntr.*,
58 F.3d 101 (4th Cir. 1995) ...................................................................18, 25

*Brown v. Morgan*,
209 F.3d 595 (6th Cir. 2000) ......................................................................11

*Brown v. N.C.D.O.C.*,
612 F.3d 720 (4th Cir. 2010) ......................................................................15

*Cameron v. Myers*,
569 F. Supp. 2d 762 (N.D. Ind. 2008) ........................................................22

*Clinkscales v. Pamlico Corr. Facility Med. Dep't*,
238 F.3d 411, 2000 WL 1726592 (4th Cir. 2000)........................................11

*Coleman v. Rahija*,
114 F.3d 778 (8th Cir. 1997) ...................................................................18, 25

*De'Lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) ...........................................................12, 29, 30

*Denton v. Hernandez*,
504 U.S. 25 (1992)..................................................................................11, 15

*Erickson v. Pardus*,
551 U.S. 89 (2007)..................................................................................12, 22

*Estelle v. Gamble*,
429 U.S. 97 (1976)..................................................................................17, 19

*Farmer v. Brennan*,
511 U.S. 825 (1994).................................................................................*passim*

*Giarranto v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...............................................................11

*Gil v. Reed*,
    381 F.3d 649 (7th Cir. 2004) ...............................................................21

*Giroux v. Somerset*,
    178 F.3d 28 (1st Cir. 1999)...................................................................22

*Greeno v. Daley*,
    414 F.3d 645 (7th Cir. 2005) ..........................................................24, 27

*Hartsfield v. Colburn*,
    371 F.3d 454 (8th Cir. 2004) ................................................................27

*Hudson v. McHugh*,
    148 F.3d 859 (7th Cir. 1998) ..........................................................22, 23

*Hunt v. Uphoff*,
    199 F.3d 1220 (10th Cir. 1999) ...........................................................23

*Iko v. Shreve*,
    535 F.3d 225 (4th Cir. 2008) .................................................................8

*Incumaa v. Ozmint*,
    507 F.3d 281 (4th Cir. 2007) ................................................................16

*Johnson v. Doughty*,
    433 F.3d 1001 (7th Cir. 2006) .............................................................20

*Johnson v. Quinones*,
    145 F.3d 164 (4th Cir. 1998) ................................................................17

*LaFaut v. Smith*,
    834 F.2d 389 (4th Cir. 1987) ................................................................17

*Langford v. Norris*,
    614 F.3d 445 (8th Cir. 2010) ......................................................22, 29, 30

*LeMarbe v. Wisneski*,
    266 F.3d 429 (6th Cir. 2001) ..........................................................27, 28

*Loe v. Armistead*,
    582 F.2d 1291 (4th Cir. 1978) ....................................................12, 26

*Mata v. Saiz*,
    427 F.3d 745 (10th Cir. 2005) .........................................................27

*McElligott v. Foley*,
    182 F.3d 1248 (11th Cir. 1999) .......................................................29

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009) ..........................................................15

*Miller v. Donald*,
    541 F.3d 1091 (11th Cir. 2008) .......................................................11

*Miller v. Schoenen*,
    75 F.3d 1305 (8th Cir. 1996) ..........................................................21

*Miltier v. Beorn*,
    896 F.2d 848 (4th Cir. 1990) ....................................................*passim*

*Nagy v. FMC Butner*,
    376 F.3d 252 (4th Cir. 2004) ..........................................................11

*Neitze v. Williams*,
    490 U.S. 319 (1989)...................................................................7, 11

*Phillips v. Roane Cnty., Tenn.*,
    534 F.3d 531 (6th Cir. 2008) ..........................................................25

*Plunk v. Givens*,
    234 F.3d 1128 (10th Cir. 2000) .......................................................11

*Porter v. Bell*,
    82 F. App'x 855 (4th Cir. 2003) (unpublished)..................................11

*Schiff v. Kennedy*,
    691 F.2d 196 (4th Cir. 1982) ..........................................................15

*Smith v. Smith*,
    589 F.3d 736 (4th Cir. 2009) .....................................................17, 19

*Steele v. Choi*,
  82 F.3d. 175 (7th Cir. 1996) ...............................................................25

*Tillery v. Owens*,
  719 F. Supp. 1256 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir.
  1990) ......................................................................................................20

*Tobey v. Jones*,
  706 F.3d 379 (4th Cir. 2013) ...............................................................12

*White v. Gregory*,
  1 F.3d 267 (4th Cir. 1993) ...................................................................11

*Williams v. Griffin*,
  952 F.2d 820 (4th Cir. 1991) ..........................................................15, 16

*Wright v. Collins*,
  766 F.2d 841 (4th Cir. 1985) ...............................................................29

**Statutes**

28 U.S.C. § 1291 .........................................................................................2

28 U.S.C. § 1331 .........................................................................................2

28 U.S.C. § 1915A ...............................................................................*passim*

42 U.S.C. § 1983 ......................................................................................1, 2

**Other Authorities**

American Heart Association - About Heart Failure,
  http://www.heart.org/HEARTORG/Conditions/HeartFailure/About
  HeartFailure/About-Heart-Failure_UCM_002044_Article.jsp (last
  visited June 3, 2014) ..............................................................................4

American Heart Association - Types of Heart Failure,
  http://www.heart.org/HEARTORG/Conditions/HeartFailure/About
  HeartFailure/Types-of-Heart-Failure_UCM_306323_Article.jsp
  (last visited June 3, 2014) ......................................................................4

## INTRODUCTION

The Supreme Court has long recognized that under the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmate." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted).

The North Carolina Department of Corrections Medical Staff, Dr. Joseph Lightsey, and Dr. Sher Guleria, abdicated their duty by demonstrating persistent and deliberate indifference to Samuel Junior Jackson's serious and well-diagnosed medical needs. Because of their indifference, Mr. Jackson now suffers from a number of other maladies and has faced life-threatening medical emergencies. Because he has not received the medical care required by the Constitution, Mr. Jackson brought this civil rights action under 42 U.S.C. § 1983.

The facts alleged by Mr. Jackson present the archetypal scenario of deliberate indifference: a licensed physician diagnoses an inmate with a serious health condition requiring urgent medical care, and prison officials do nothing to adequately treat this condition, resulting in injury to the inmate. The Supreme Court and this Court have repeatedly recognized that such a failure to provide medical treatment is constitutionally unacceptable. Accordingly, the district court erred in dismissing Mr. Jackson's deliberate indifference claims.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear this case under 28 U.S.C. § 1331. In an order dated July 6, 2012, the district court dismissed Mr. Jackson' claims against the North Carolina Department of Corrections Medical Staff pursuant to 28 U.S.C. § 1915A. The district court granted the remaining defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss and entered an order dismissing all claims on July 31, 2013. Mr. Jackson filed a timely notice of appeal on August 12, 2013. This Court has appellate jurisdiction to review both orders under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.    Whether Defendants' motion to dismiss sufficiently demonstrated that Jackson's requests for injunctive relief are moot.

2.    Whether the district court erred in dismissing Jackson's claims for damages.

## STATEMENT OF THE CASE

On November 2, 2011, Samuel Junior Jackson filed the instant action against the North Carolina Department of Corrections Medical Staff, Dr. Joseph Lightsey, and Dr. Sher Guleria (collectively "Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. J.A. 6-8. Specifically, Jackson alleged that Defendants were deliberately indifferent to his serious medical needs, in contravention of the Eighth Amendment. The district court twice ordered Jackson to correct technical deficiencies in his pleadings, *see* J.A. 9; 17-18, and in compliance, Jackson filed a response on November 17, 2011, *see* J.A. 10-16, and

an amended complaint on April 27, 2012 (hereinafter the "Complaint"). [1]  J.A. 19-
29.  In an order dated July 6, 2012, the district court dismissed Jackson's claims
against the North Carolina Department of Corrections Medical Staff (hereinafter
"N.C.D.O.C. Medical Staff"), and therefore dismissed them as a party to the suit,
finding that the allegations against the N.C.D.O.C. Medical Staff did not survive a
28 U.S.C. § 1915A frivolity review.  J.A. 30-31.  The court allowed the allegations
against Lightsey and Guleria to go forward, however, finding that the allegations
on their face stated plausible claims of deliberate indifference.  J.A. 31.  On
October 25, 2012, Lightsey and Guleria filed their answer to the Complaint along
with a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  J.A. 33-36; 36-46.  Jackson filed
his reply on January 28, 2013.  J.A. 46-55.  After considering the pleadings, the
district court granted Lightsey's and Guleria's motion to dismiss on July 31, 2013
and entered judgment.  J.A. 55-60; 61.

Jackson timely filed his notice of appeal on August 12, 2013.  J.A. 62.  On
April 29, 2014, the Court appointed undersigned counsel to represent Jackson on
appeal, and requested briefing on two issues: (1) whether Defendants' motion to
dismiss sufficiently demonstrated that Jackson's requests for injunctive relief are
moot; and (2) whether the district court erred by dismissing Jackson's claims for

---

[1] Jackson also filed motions for appointment of counsel, which the district court
denied.  *See* J.A. 31; 55-56.

damages.  The Court also gave counsel permission "to brief and argue any other issues that may appear meritorious."

## STATEMENT OF FACTS

### A.    Jackson Suffers from Congestive Heart Failure

A licensed cardiologist, Dr. White, diagnosed Appellant Samuel Junior Jackson as suffering from congestive heart failure in June 2003.[2]   J.A. 21. Congestive heart failure, a debilitating weakening of the heart, is a serious condition for which there is no cure.[3]   The cardiologist prescribed numerous medications to treat Jackson's condition, including Coreg, Zoloft, Lisinopril, Indocin, Ibuprofen, and HCTZ.  *Id.*  Jackson took these drugs daily in order to treat his heart condition, and he needs to take them for the rest of his life in order to stay alive.  *Id.*

### B.    Central Prison Officials Failed to Adequately Treat Jackson's Heart Condition

On November 10, 2008, Jackson was committed to Central Prison, North Carolina.  J.A. 56.  Appellee Doctor Joseph Lightsey[4] performed Jackson's initial

---

[2] In his Complaint, Jackson misspells his condition as "congested" heart failure.

[3] *See* American Heart Association - About Heart Failure, http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/About-Heart-Failure_UCM_002044_Article.jsp (last visited June 3, 2014); American Heart Association - Types of Heart Failure, http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Types-of-Heart-Failure_UCM_306323_Article.jsp (last visited June 3, 2014).

[4] Jackson mistakenly referred to Dr. Lightsey as a Physician's Assistant in his Complaint.

medical screening upon arrival. J.A. 21. At the screening, Jackson informed Lightsey that he suffers from congestive heart failure. *Cf.* J.A. 21-22; 24. He also told Lightsey that his cardiologist would be forwarding his medical records to the prison. J.A. 21-22. Lightsey proceeded with the screening, and contrary to what he had just been told, diagnosed Jackson as suffering from heart arrhythmia — an irregular heartbeat.[5] *Id.* Lightsey, who is not a cardiologist, changed Jackson's medication regimen and removed all activity restrictions in accordance with his erroneous diagnosis. J.A. 22.

Prior to his arrival at Central Prison, Jackson lived with congestive heart failure for over five years without incident. *See* J.A. 21; 25. However, upon commencing Dr. Lightsey's course of treatment, his health rapidly deteriorated. Jackson repeatedly told Lightsey and other N.C.D.O.C. Medical Staff officials about his worsening health condition. *See* J.A. 7; 25. He explained to them on multiple occasions that the change of treatment prescribed by Lightsey was having a deleterious effect on his health, causing him to suffer from increased heart rate, headaches, gout, shortness of breath, chest plains, blurred vision, burning of the eyes, and memory loss. J.A. 25. Despite these complaints, Lightsey and other N.C.D.O.C. Medical Staff officials did not alter Jackson's course of treatment. *Id.* Jackson repeatedly requested that the N.C.D.O.C. Medical Staff arrange a consult

---

[5] Jackson misspelled the condition in his Complaint as "heart risma."

with a cardiologist who could treat his heart condition appropriately. J.A. 22. His requests went unanswered.

Jackson suffered a heart attack due to the persistent mistreatment of his heart condition. *Id.* N.C.D.O.C. Medical Staff officials transported Jackson to Rex Hospital for treatment, at which point he was further diagnosed with kidney damage, extremely high blood pressure, and borderline diabetes as a result of the inadequate treatment of his congestive heart failure. *Id.* When Jackson was released from Rex Hospital, no adjustment was made to his course of treatment; he was later transferred to Nash Correctional Institution (where he is presently incarcerated), without receiving further treatment from a cardiologist for his heart condition. *Id.*

### C. Inadequate Medical Care Has Continued at Nash Correctional Institution

Jackson continued to receive inadequate health care at Nash Correctional Institution. At Jackson's request, a Physician's Assistant, David Hinds, examined Jackson and ordered blood-work, an EKG, additional medication, and a consult with a doctor. J.A. 24. Appellee Dr. Sher Guleria,[6] who is not a cardiologist, then assessed Jackson's health condition. *Id*. Guleria promised Jackson that he would administer the EKG, monitor his heart rate for 24 hours, provide him with a special

---

[6] Jackson misspells Guleria's last name as "Galeria" in the Complaint.

diet, and request a consult with a cardiologist. *Id*. After Jackson endured months of waiting and several sick calls, N.C.D.O.C. Medical Staff officials informed him that Guleria had entered no new orders regarding his treatment. *Id*.

For years, since entering the North Carolina correctional system, Mr. Jackson has endured the pain and suffering attendant to inadequately treated congestive heart failure. J.A. 25. Jackson is unable to walk long distances, he has lost a significant amount of weight, and he has dreams of dying in his sleep. *Id*. Jackson went from a state of relatively good health to now requiring open-heart surgery — all because his heart condition has gone untreated and mistreated for so long. *See* Appellant's Informal Br. at 6. Given the severity of his medical condition, Jackson "can only receive adequate and proper medical treatment at a hospital or through a cardiologist." J.A. 57 (quotation marks omitted).

### D.    The District Court's Decisions

#### 1.    Dismissal of N.C.D.O.C. Medical Staff as a Party

The district court screened Jackson's complaint as required by 28 U.S.C. § 1915A, which allows for early dismissal of civil actions filed by a prisoner against a government entity. Upon review of the allegations, the district court noted that a claim is frivolous if it "lacks an arguable basis either in law or in fact." J.A. 30 (quoting *Neitze v. Williams*, 490 U.S. 319, 325 (1989)). The court then dismissed Jackson's claims against the N.C.D.O.C. Medical Staff as frivolous,

because "in the 'Parties' section of the form complaint, [Jackson] only identifies Drs. Lightsey and Guleria as defendant to his suit." J.A. 31. The district court also found that the allegations in the Complaint do not implicate other members of the N.C.D.O.C. Medical Staff, warranting their dismissal as a party. *Id.*

### 2. Dismissal of Claims Against Lightsey and Guleria Under Rule 12(b)(6).

On July 31, 2013, the district court dismissed Jackson's claims against Drs. Lightsey and Guleria, finding that Jackson failed to state a claim upon which relief can be granted. J.A. 59-60. In rendering its decision, the court noted that Jackson needed to "demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." J.A. 59 (alterations in original) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). The court characterized Jackson's allegations as complaining that "Defendants are not permitting him to be examined by a cardiologist" and that "his medical treatment post-incarceration differs from the treatment he received pre-incarceration." *Id.* The district court did not discuss whether Jackson has a serious medical need, seemingly assuming that Jackson had satisfied this aspect of the deliberate indifference test. The court held, however, that Jackson failed to adequately plead deliberate indifference, finding that Jackson received "ongoing medical attention"

and characterizing his complaints as a "disagreement" over treatment.  J.A. 59-60. On this basis, the court dismissed Jackson's claims.[7]

## SUMMARY OF ARGUMENT

The Eighth Amendment forbids the government from inflicting cruel and unusual punishment.  This prohibition prevents prison officials from acting with deliberate indifference to an inmate's serious medical needs.  For close to five years, the North Carolina Department of Corrections Medical Staff, including Drs. Lightsey and Guleria, have been deliberately indifferent to Samuel Jackson's serious medical needs.  Prior to his incarceration, Jackson was diagnosed with a life-long serious heart condition — congestive heart failure — that was carefully treated by a licensed cardiologist.

Upon arriving at Central Prison, Dr. Lightsey failed to treat Jackson's diagnosed condition, instead haphazardly re-diagnosing him with a less-serious condition and changing his course of treatment.  Jackson's health deteriorated rapidly as a result: he suffered a heart attack and he has been diagnosed with a number of other maladies.  When Jackson was transferred to Nash Correctional Institution, Dr. Guleria failed to treat Jackson's previously diagnosed heart condition or alter his course of treatment despite his visible decline in health.  In

---

[7] Appellees also argued that Jackson's claim for injunctive relief was moot and that they were protected from suit by qualified immunity.  *See* J.A. 33-34; 40; 43.  The district court did not rule on either of these arguments.

fact, Dr. Guleria failed to administer the course of treatment that he himself had recommended.

Jackson repeatedly pleaded to the N.C.D.O.C. Medical Staff for adequate medical treatment, to no avail. Officials at all levels of the N.C.D.O.C. Medical Staff decision-making chain were implicated in Jackson's dangerously inadequate and unconstitutional medical care. Thus, the district court erred in dismissing the claims against the N.C.D.O.C. Medical Staff as frivolous.

The persistent, deliberate indifference to Jackson's serious medical needs has culminated with him now requiring open-heart surgery. This is the prototypical case of deliberate indifference: Lightsey, Guleria, and other N.C.D.O.C. Medical Staff officials knew of or should have known of Jackson's medical needs, and blatantly and recklessly disregarded them. Accordingly, this Court should reverse the district court's decisions and remand for further proceedings to allow Jackson to vindicate his constitutional rights and receive the medical treatment to which he is constitutionally entitled.

## ARGUMENT

### I.  STANDARD OF REVIEW

#### A.  Dismissal Under 28 U.S.C. § 1915A

This Court has yet to announce in a binding decision the standard of review it applies to claims dismissed as frivolous under 28 U.S.C. § 1915A. There is a split among the circuits as to whether *de novo* review or abuse of discretion review

should apply.  *Compare, e.g.*, *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (applying abuse of discretion review), *with Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (applying *de novo* review); *Plunk v. Givens*, 234 F.3d 1128, 1130 (10th Cir. 2000) (leaving open the question of appropriate standard of review).  Based on its previous decisions, it is likely that this Court will review for abuse of discretion the dismissal of a claim as frivolous under § 1915A.  *See Clinkscales v. Pamlico Corr. Facility Med. Dep't*, 238 F.3d 411, 2000 WL 1726592 (4th Cir. 2000) (unpublished table decision); *Porter v. Bell*, 82 F. App'x 855 (4th Cir. 2003) (unpublished); *cf. Nagy v. FMC Butner*, 376 F.3d 252, 255 (4th Cir. 2004) (applying abuse of discretion standard of review for complaint dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i)).  Appellant submits that dismissal pursuant to § 1915A was improper under either standard of review.

A claim is properly dismissed as frivolous if it "lacks an arguable basis in either law or fact."  *White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (quoting *Neitzke*, 490 U.S. at 325).  "A finding of factual frivolousness is appropriate when the facts alleged give rise to the level of the irrational or the wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

## B.   Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) dismissals for failure to state a claim are reviewed *de novo*. *Giarranto v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  If the Court finds that

the allegations in the complaint have "facial plausibility," allowing it "to draw the reasonable inference that the defendant is liable for the misconduct alleged," the Court will reverse the dismissal and remand for further proceedings. *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Regardless of whether the Court is reviewing a dismissal under §1915A or Rule 12(b)(6), when conducting its review the Court credits the facts set forth by the plaintiff in his complaint, drawing all reasonable inferences in his favor. *De'Lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir. 2013). "[L]iberal construction of the pleadings is particularly appropriate where, as here, there is a Pro se complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II.  JACKSON'S CLAIMS FOR INJUNCTIVE RELIEF ARE NOT MOOT

Appellees Lightsey and Guleria argued summarily below that Jackson's claims for injunctive relief are moot.  They asserted that because Jackson is no longer incarcerated at Central Prison — where Dr. Lightsey works, and because Dr. Guleria is no longer employed at Nash Correctional Institute — where Jackson is currently incarcerated, his claims against them for injunctive relief are moot. This mootness argument fails, however, with regard to Jackson's request for injunctive relief as to other members of the N.C.D.O.C. Medical Staff.  As

explained below, because Jackson's factual claims and prayer for relief clearly implicate N.C.D.O.C. Medical Staff officials beyond Lightsey and Guleria, the district court erred in dismissing the N.C.D.O.C. Medical Staff as a party to this case. Jackson's claims for injunctive relief as to the N.C.D.O.C. Medical Staff reflect a live controversy.

### A.    The District Court Erred in Dismissing N.C.D.O.C. Medical Staff as a Defendant

Contrary to the district court's decision, when drawing all reasonable inferences in Jackson's favor, the misconduct alleged in the Complaint clearly extends beyond the deliberate indifference of Drs. Lightsey and Guleria and implicates other N.C.D.O.C. Medical Staff officials. In his Complaint, Jackson complained of repeated sick calls going unanswered, *see* J.A. 22, being discharged from the hospital without adequate care, *see id.*, the N.C.D.O.C. Medical Staff's incomplete, inconsistent, and inaccurate medical orders, *see* J.A. 24, and the lengthy delays before he received a response from prison officials, *see id*. These factual allegations implicate a variety of N.C.D.O.C. Medical Staff officials at all levels of the hierarchical chain. Given the wide-ranging allegations of wrongdoing, it is reasonable to infer that Lightsey and Guleria were not behind every single instance of indifference alleged in the Complaint.

Moreover, because of Lightsey's and Guleria's reckless course of conduct, Jackson's health visibly deteriorated at a rapid pace, resulting in life-threatening

13

medical complications. Yet, N.C.D.O.C. Medical Staff officials did not intercede, even though they were constitutionally required to do so under the Eighth Amendment. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (recognizing that prison officials can be liable for failing to "promptly provide an inmate with medical care," and for "tacitly authoriz[ing] . . . prison physicians' constitutional violations"), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Jackson's Complaint alleged facts supporting claims of supervisory liability against various N.C.D.O.C. Medical Staff officials.

As Appellees Lightsey and Guleria and the district court acknowledged below, a recurring theme in Jackson's Complaint is that he was not provided adequate medical care in part because he was not seen or treated by a cardiologist. It is for this reason that Jackson requested that the court order the N.C.D.O.C Medical Staff to provide relief in the form of treatment by a cardiologist. J.A. 7; 26. Drawing all inferences in Jackson's favor, it is reasonable to conclude that N.C.D.O.C. Medical Staff officials other than Lightsey and Guleria have the power and ability to order such a consult, but they have thus far failed to do so.

While Jackson's allegations of unconstitutional medical care focus on the actions (and inactions) of Drs. Lightsey and Guleria, their deliberate indifference was part and parcel of widespread systemic indifference implicating a number of

N.C.D.O.C. Medical Staff officials.[8]   Construing the Complaint liberally and drawing all inferences in Jackson's favor, it is clear that the allegations against the N.C.D.O.C. Medical Staff are not "so nutty, delusional, or wholly fanciful as to be simply unbelievable."  *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (quotation marks omitted).   Instead, the Complaint alleges facts demonstrably implicating various members of the N.C.D.O.C. Medical Staff in Jackson's legal claims for deliberate indifference, which the district court has already held to be non-frivolous.  *See* J.A. 31; 55.   Because the Complaint alleges facts involving N.C.D.O.C. Medical Staff officials other than Lightsey and Guleria, the claims against the N.C.D.O.C. Medical Staff are not "clearly baseless."  *See Denton*, 504 U.S. at 32.  The district court abused its discretion by dismissing the claims against the N.C.D.O.C. Medical Staff as frivolous.

**B.    The Injunctive Relief Sought by Jackson is Still Available Once N.C.D.O.C. Medical Staff is Restored as a Party**

Once the Court reverses the district court's dismissal of the claims against the N.C.D.O.C. Medical Staff, it is clear that the injunctive relief requested by

---

[8] While Jackson may not have listed N.C.D.O.C. Medical Staff as a party in Section III of the Form Complaint, he *did* include N.C.D.O.C. Medical Staff as the first party defendant listed in the case caption on the first page of the form.  J.A. 19.  Construing the Complaint liberally, *see Brown v. N.C.D.O.C.*, 612 F.3d 720, 722 (4th Cir. 2010), it is clear that Jackson intended to include unknown members of the N.C.D.O.C. Medical Staff as parties to the suit.  Moreover, even though Jackson was not able to name the other N.C.D.O.C. Medical Staff officials with specificity at the time his Complaint was filed, this Court has made clear that it allows "actions to proceed against real, but unidentified, defendants."  *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982).

Jackson is still available.  To be sure, as Appellees Lightsey and Guleria noted below, the transfer of an inmate to a different prison facility can at times moot the inmate's request for injunctive relief.  *See, e.g.*, *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  This is only true, however, where the inmate's request for injunctive relief is predicated upon constitutional harms flowing from the specific facility and/or conditions in which he is incarcerated.  *See Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) ("Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.").  For example, when an inmate seeks relief from allegedly unconstitutional prison conditions, transfer to a different facility moots the claim for injunctive relief.  *See Williams*, 952 F.2d at 823 (prisoner's transfer to different facility mooted claim seeking injunctive relief from unsanitary prison conditions).

Here, the relief that Jackson requested included that he be seen and treated by a cardiologist.  *See* J.A. 26.  This claim for relief remains without respect to where Lightsey and Guleria work or where Jackson is incarcerated.  The deliberate indifference alleged and the harm suffered is ongoing absent adequate medical care, which Jackson claims he still has not received.  For this reason, Jackson's claims for injunctive relief are decidedly not moot.

### III.  JACKSON ASSERTED PLAUSIBLE CLAIMS OF DELIBERATE INDIFFERENCE

Even if the Court were somehow to find Jackson's claim for injunctive relief moot, the district court erred in dismissing Jackson's claims for money damages. *See Williams*, 952 F.2d at 823 (finding that even when claim for injunctive relief is moot the entire case is not moot if there is a claim for money damages). Construing the Complaint liberally and in Jackson's favor, it plausibly sets forth facts to support his claims of deliberate indifference.

To state a claim of deliberate indifference, Jackson had to plead plausible facts showing that he had an objectively serious medical need and that the Defendants knew of, and disregarded, that need. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Farmer*, 511 U.S. at 837.  When considering an Eighth Amendment claim, the Court is mindful of the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency embodied in the Eighth Amendment." *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (alterations and quotation marks omitted).

### A.  Jackson Suffers From a Serious Medical Condition and Needs Proper Medical Attention

Whether Jackson has a serious medical need was not contested below, and therefore this Court can accept that as a given. *See Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009).  In any event, Jackson's diagnosed heart condition —

17

congestive heart failure — and the heart attack and other maladies he suffered, all establish that Jackson has an objectively serious medical need. *Johnson*, 145 F.3d at 167 (4th Cir. 1998) ("With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition.").

This Court has previously recognized that a heart condition is an objectively serious medical condition, especially if improper treatment of the condition can result in a heart attack. *See Miltier*, 896 F.2d at 850-51; *cf. Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) ("[T]he objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment."). Moreover, the fact that Jackson takes numerous medications multiple times a day to treat his heart condition shows that he has an objectively serious medical need for the purposes of the deliberate indifference test. *See Brice v. Va. Beach Correctional Cntr.*, 58 F.3d 101, 104 (4th Cir. 1995) (a "serious medical need . . . require[s] medical treatment"); *Coleman*, 114 F.3d at 784 (a serious medical need is satisfied when an inmate has a health condition "that has been diagnosed by a physician as requiring treatment").

Whether Jackson suffers from correctly diagnosed congestive heart failure, or erroneously diagnosed heart arrhythmia, if his heart condition is left untreated or improperly treated, the results could be fatal. The facts alleged in the Complaint

show that Jackson suffers a serious heart condition, satisfying the objective component of the deliberate indifference test.

## B.   Defendants Were Deliberately Indifferent to Jackson's Medical Needs

Turning to the subjective component of the deliberate indifference test, to state a claim of deliberate indifference, an inmate must allege facts that demonstrate that prison officials knew of, and disregarded, an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 835–37. This Court has recognized "that deliberate indifference can be manifested in at least the following three manners: 'by prison doctors in their response to the prisoner's needs or by prison [officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Smith*, 589 F.3d at 739 (quoting *Estelle*, 429 U.S. at 104-05). Here, Jackson has been subjected to all three types of deliberate indifference. The facts alleged by Jackson support separate constitutional claims against Lightsey, Guleria, and other N.C.D.O.C. Medical Staff officials; and most certainly when considered together, these facts establish a pattern of deliberate indifference to Jackson's serious medical needs by the Defendants.

### 1. Lightsey failed to verify facts necessary to make a sound medical judgment

Upon Jackson's arrival at Central Prison, Lightsey's response to Jackson's medical needs was clearly inadequate. At the initial screening, Jackson informed Lightsey that he suffered from congestive heart failure, stating that his cardiologist would be forwarding his medical records. From this moment, Lightsey was clearly aware of Jackson's medical diagnosis and he had access to Jackson's medical records from the cardiologist in the event he needed further corroboration of Jackson's assertions. Despite this knowledge, Lightsey proceeded to re-diagnose Jackson with a comparatively less serious heart condition, change his medical regimen, and remove all activity restrictions. And there is no indication that Lightsey attempted to crosscheck his re-diagnosis against Jackson's medical records.

Lightsey's conduct at Jackson's initial screening gives rise to a plausible claim of deliberate indifference. The Supreme Court has made clear that a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843, n.8. Jackson made Lightsey aware of his serious heart condition. Instead of verifying the facts, Lightsey haphazardly made an erroneous diagnosis in a field outside of his specialty. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.

2006) ("[A] medical professional's erroneous treatment decision can lead to deliberate indifference liability if the decision was made in the absence of professional judgment."); *see also Tillery v. Owens*, 719 F. Supp. 1256, 1308 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

Moreover, Lightsey changed the course of treatment that had been prescribed for Jackson by a cardiologist, even though that course of treatment had been successful for five years and even though Lightsey was not a cardiologist and was examining Jackson for the first time.  As alleged, there was no reason for Lightsey to change Jackson's course of treatment or to second-guess the cardiologist's diagnosis.  The fact that Lightsey altered the course of treatment prescribed for Jackson by his cardiologist in the absence of sound medical judgment further supports a deliberate indifference claim.  *See Miller v. Schoenen*, 75 F.3d 1305, 1310-11 (8th Cir. 1996) (not providing medical care that an outside doctor said was needed supported deliberate indifference claim); *see also Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004) ("prescribing on three occasions the very medication the specialist warned against . . . while simultaneously cancelling the two of the three prescribed [medications]" supports deliberate indifference claim); *cf. Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010) (removing key medical care measures is unreasonable and therefore supports a deliberate indifference claim).

Lightsey did not act in accordance with sound medical judgment; to the contrary, Lightsey provided Jackson with grossly incompetent and inadequate medical care. *See Miltier*, at 896 F.2d at 851. After an initial screening, Lightsey recklessly and without reason altered Jackson's heart treatment, switching Jackson from a recommended course of treatment prescribed by a cardiologist that had a five-year track record of success, with no indication that he even reviewed Jackson's medical records. These facts alone clearly support Jackson's claim of deliberate indifference against Lightsey.

### 2. Lightsey failed to provide treatment for Jackson's serious medical condition

Because Lightsey did not attempt to verify Jackson's serious health problems, Lightsey failed to adequately treat Jackson's congestive heart failure. Once an inmate is diagnosed with a medical condition, prison officials have a duty to provide adequate treatment for it. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *see Giroux v. Somerset*, 178 F.3d 28, 34 (1st Cir. 1999). If prison officials do not provide treatment for an inmate's diagnosed condition and the inmate suffers as a result, the inmate has an actionable case of deliberate indifference. *See, e.g.*, *Cameron v. Myers*, 569 F. Supp. 2d 762, 765 (N.D. Ind. 2008) (finding deliberate indifference where prison officials failed to provide medication for Crohn's disease and a worse condition developed as a result); *Hudson v. McHugh*, 148 F.3d 859, 861-62 (7th Cir. 1998); *see also Erickson*, 551

U.S. at 91-93 (holding that petitioner stated an Eighth Amendment claim when officials failed to provide treatment for diagnosed hepatitis C).

The *Hudson* case is particularly instructive. In *Hudson*, the inmate informed prison officials during intake that he suffered from epilepsy, and that he required specific medication to treat his condition. 148 F.3d at 864. Despite his diagnosis, the prison officials did nothing to provide the inmate the necessary medication, even after the inmate repeatedly requested the medication. *Id.* The inmate then suffered seizures as a result of the prison officials' failure to provide the proper medication. *Id.* In upholding the inmate's constitutional claim, the Seventh Circuit held that "this is the prototypical case of deliberate indifference, an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury." *Id.*

Here, despite the district court's holding to the contrary, it is not a "mere disagreement in treatment" when a prison doctor radically alters necessary treatment in a way that jeopardizes an inmate's health. *Hunt v. Uphoff*, 199 F.3d 1220, 1223-24 (10th Cir. 1999) (finding sufficient facts to support deliberate indifference where doctor stopped inmate's insulin prescription to treat diabetes). Nor can prison officials avoid liability by pointing to the fact that an inmate saw a doctor, when the doctor rendered plainly inadequate care. *Id.* Lightsey's failure to

treat Jackson's diagnosed congestive heart failure satisfies the standard necessary to plead deliberate indifference.

### 3. Defendants decided not to alter Jackson's course of treatment despite his continued suffering

Even assuming that Lightsey's initial re-diagnosis and mistreatment of Jackson's heart condition did not contravene the Eighth Amendment, Defendants' inaction following Lightsey's re-diagnosis leading up to Jackson suffering a heart attack supports plausible claims of deliberate indifference against both Lightsey and the broader N.C.D.O.C. Medical Staff. Furthermore, the continued mistreatment of Jackson's heart condition after he suffered a heart attack supports additional claims of deliberate indifference against Guleria and the N.C.D.O.C. Medical Staff.

Jackson's health began to suffer almost immediately after he started on Lightsey's new course of treatment. Jackson complained to N.C.D.O.C. Medical Staff officials, including Lightsey, that the altered course of treatment was having a number of adverse side effects, causing him to suffer from an increased heart rate, headaches, gout, shortness of breath, chest plains, blurred vision, burning of the eyes, and memory loss. Yet, despite these complaints, the N.C.D.O.C. Medical Staff and Lightsey did nothing to alter Jackson's course of treatment, instead waiting until he suffered a heart attack before sending him to the hospital. Moreover, even after Jackson's release from the hospital and his transfer to Nash

Correctional, Jackson still did not receive adequate treatment, despite seeing Dr. Guleria and making multiple sick calls.  Defendants have allowed Jackson's health to decline to the point where he is an invalid and requires open-heart surgery.

Once Jackson's health noticeably continued to deteriorate when he was deprived of the proper medication, Defendants were constitutionally required to take action — yet they "obdurate[ly] refused" to do so.  *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005).  Defendants' continued refusal to address Jackson's medical needs supports his claims of deliberate indifference.  By the time Jackson suffered a heart attack, his decline in health would have been apparent to anyone who saw him, serving as clear evidence that his current course of treatment was inadequate to treat his condition.  *See Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 540-42 (6th Cir. 2008) (allegations that prisoner complained of deteriorating condition for two weeks yet officials failed to take her to the hospital stated a claim for deliberate indifference); *Farmer*, 511 U.S. at 842 (knowledge of substantial risk may be inferred from circumstantial evidence or from the very fact that the risk was obvious).

Jackson's symptoms noticeably called for a different course of treatment, which Defendants failed to provide.  *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) ("If the symptoms plainly called for a particular medical treatment—the leg is broken, so it must be set; the person is not breathing, so CPR must be

administered—a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983."); *see also Brice*, 58 F.3d at 103-05 (prison officials may have been deliberately indifferent when they ignored prisoner's complaints of pain).  And even if Defendants somehow missed the visible and accelerated decline in Jackson's health, this is no excuse, as *Jackson repeatedly told them of his suffering*.  Lightsey, Guleria, and the broader N.C.D.O.C. Medical Staff knew of or should have known that the course of treatment was not only ineffective to treat Jackson's medical needs, but was detrimental to his health; Defendants ignored a "critical [and] escalating" situation.  *Coleman*, 114 F.3d at 785 (quotation marks omitted).

When Defendants failed to change Jackson's course of treatment and provide adequate medical treatment in the face of an obvious and repeatedly stated need, they violated his Eighth Amendment rights.  *See, e.g.*, *Loe*, 582 F.2d at 1296.

### 4. Guleria was deliberately indifferent when he failed to provide the treatment that he himself prescribed

Dr. Guleria's conduct at Nash Correctional also supports Jackson's claims of deliberate indifference.  Guleria examined Jackson, and determined, in his medical judgment, that Jackson needed an EKG, a change in diet, heart monitoring, and a change in treatment.  Yet, the Complaint indicates that Guleria did not order the treatment that he believed to be medically necessary, as a result of which Jackson's heart condition went untreated.  And after many months and multiple sick calls,

N.C.D.O.C. Medical Staff officials finally told Jackson that there was no evidence of Guleria's orders in his medical records.

This Court has held that "failure to provide the level of care that a treating physician himself believes is necessary . . . surpasses negligence and constitutes deliberate indifference." *Miltier*, 896 F.2d at 853. In *Miltier*, the prison physician recommended that the inmate be transferred to a hospital cardiac unit upon presentation of cardiac-related symptoms. *Id.* Despite recognizing this need and making this recommendation, the physician "made no effort to follow up," supporting a finding of deliberate indifference. *Id.*

Guleria's conduct is reminiscent of the physician's in *Miltier*. Based on his evaluation, Guleria was clearly aware that Jackson suffered from a heart condition that needed further treatment and he made a number of recommendations as a result. Yet, Guleria did not order the treatment that he himself had recommended and recognized as medically necessary. These facts support a plausible claim of deliberate indifference against Guleria.

### 5. Defendants failed to provide Jackson access to a cardiologist despite a clear need for a specialist

Jackson's claims of deliberate indifference also focus on the fact that Defendants refused him access to a cardiologist. Although Defendants attempted to trivialize this refusal in the proceedings below, the fact that Jackson required a

cardiologist to treat his serious heart condition, yet was not referred to a cardiologist, states a valid claim of deliberate indifference.

Multiple circuits have recognized that the refusal to refer an inmate to a specialist can constitute deliberate indifference. *Greeno*, 414 F.3d at 655 (finding failure to refer prisoner to a specialist despite abdominal pain could be deliberate indifference); *Mata v. Saiz*, 427 F.3d 745, 756-59 (10th Cir. 2005) (nurse failing to refer inmate to a practitioner for symptoms of cardiac emergency could be deliberate indifference); *Hartsfield v. Colburn*, 371 F.3d 454, 457-58 (8th Cir. 2004) (delay in referring inmate to a dentist supported deliberate indifference claim). Notably, in *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001), an inmate suffered from a bile leak, which was treated on multiple occasions by a general surgeon employed by the prison. *Id.* at 432-33. Despite the frequent treatment, the inmate's condition worsened, at which point the surgeon referred the inmate to a gastroenterologist. *Id.* at 433. The Sixth Circuit held that the fact that the surgeon "failed to refer [the inmate] *immediately* to a specialist," supported a finding of deliberate indifference. *Id.* at 438 (emphasis in original).

Defendants acknowledged that Jackson suffers from a heart condition that requires treatment, and Jackson had his medical records from his cardiologist forwarded to the prison confirming this. Yet, Defendants refused to let Jackson see a cardiologist even though his condition was worsening by the day. It was only

when Jackson suffered a heart attack that Defendants transferred Jackson to the hospital, and even then, they discharged him and returned him to custody before a cardiologist could alter his course of treatment.  After his release from the hospital and transfer to Nash Correctional, Jackson's health continued to decline steadily, but Defendants still refused to let a cardiologist examine him.  At this point, the need for Jackson to see a specialist for his heart condition was both clear and acute. Defendants' conduct in denying Jackson access to a cardiologist in spite of a clear need is evidence of subjective deliberate indifference.

### C.    "Some" Medical Treatment Is Not the Same as Constitutionally Adequate Medical Treatment

The district court held that because Defendants provided Jackson with "on going medical attention," *see* J.A. 59, he could not state a claim for deliberate indifference.  Yet, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (quotation marks omitted).  Here, the medical "care" amounted to no treatment at all, as it did nothing but exacerbate further Jackson's health problems.  Jackson went into the N.C.D.O.C. Medical Staff's custody with well-managed congestive heart failure; because of Defendants' deliberate indifference, he now requires open-heart surgery, he is practically an invalid, and he suffers from a host of other illnesses.

29

Further highlighting the district court's error, the court's suggestion (*see* J.A. 59) that, because Jackson received some treatment he cannot state a constitutional claim, runs contrary to what this Court reiterated just last year: that "*some* treatment" is not the same as "*constitutionally adequate* treatment." *See De'Lonta*, 708 F.3d at 526. "[A] total deprivation of care is not necessary" to show an Eighth Amendment violation. *Langford*, 614 F.3d at 460. And while the district court was correct in noting that medical care that simply falls below an inmate's preferred standards does not necessarily give rise to an Eighth Amendment claim, J.A. 59; *see Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), Defendants have allowed Jackson's health to "deteriorate until emergency intervention was required." *Langford*, 614 F.3d at 450. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Id. at* 460 (quotation marks omitted). An inmate in Jackson's position is not required to teeter on the edge of death before receiving adequate medical care.

This Court provided a fitting example in *De'Lonta*:

> Imagine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not.

708 F.3d at 526.

Jackson freely admits that Defendants have examined and treated him; indeed, this is a necessary component of his constitutional claims. The gist of those claims is that the treatment Defendants provided fell below constitutionally required standards of medical care. As Jackson has alleged, he went for extended periods without adequate medical attention, even though he pleaded for it and clearly required it. Defendants cannot, in effect, slap a Band-Aid on a gunshot wound and believe that this satisfies their medical obligations under the Eighth Amendment. As alleged in the Complaint, Jackson suffers an objectively serious medical condition, and despite their awareness of his condition, Defendants refused to provide adequate medical care. Defendants' actions in offering grossly inadequate medical care and refusing to provide needed medical treatment fell far short of constitutional requirements.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgments of the

district court and remand for further proceedings.

## ORAL ARGUMENT

Appellant respectfully requests oral argument.

Respectfully submitted,

Elliott Schulder
Daniel S. Harawa
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Phone: (202) 662-5850
Fax: (202) 778-5850
Email: dharawa@cov.com

*Counsel for Plaintiff-Appellant*
*Samuel Junior Jackson*

Dated: June 9, 2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,296 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman and 14 point font.

_____
Daniel S. Harawa

June 9, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2014 I caused copies of the Opening Brief for

Plaintiff-Appellant Samuel Junior Jackson to be served by the Court's Electronic

Case Filing system upon:

Kelly Street Brown
YOUNG, MOORE & HENDERSON, PA
3101 Glenwood Avenue
P. O. Box 31627
Raleigh, NC 27622
Direct: 919-782-6860
Email: ksb@youngmoorelaw.com

Elizabeth Pharr McCullough
YOUNG, MOORE & HENDERSON, PA
3101 Glenwood Avenue
P. O. Box 31627
Raleigh, NC 27622
Direct: 919-782-6860
Email: epm@youngmoorelaw.com

*Counsel for Defendants-Appellees*

Daniel S. Harawa